Here ye, here ye, here ye, His Honorable McCullough Corp. of the 2nd Judicial District, now open for suit with Your Honor, Your Honor, Mary S. Shostakovich. Your Honor, please have a seat. Your Honor, this case on the document 2-15-0495, people of the State of Illinois, the A0A-15 Civil Imposition Inc. Partly to Chris McCullough. Partly on behalf of the Court of Arbitration, Mr. McCullough, attorney, Mr. Joel Frost. Partly on behalf of the District Attorney, attorney, Ms. Janet Leigh Dixon. Are you ready to proceed, Mr. McCullough? I am, Your Honor. Good morning, esteemed and honorable justices. My name is Joel Robb of the Law Offices of Hessek Priblo. I represent the A0A-15 Civic Organization. We are here on appeal of the trial court's finding in favor of the State's forfeiture complaint. With the facts, case history, and briefs in the records, we proceed with the following arguments. The Civic Organization contends that the forfeiture complaint for seizure of the patches was not timely. How do you have standing to make that argument, counsel? Standing we have from the standpoint that we are the owners of the patches. We filed a petition as an intervening party. That petition was not objected to. It was granted by the court. As owners of the corporate mark that are at issue here, the Civic Organization has standing from that perspective. Isn't ownership a question of fact for the trial court to resolve and not an issue for this court? We have filed a replevin suit, a civil matter, in conjunction with this case. That petition for replevin was entered and continued as this forfeiture matter played out. However, originally we were dealing with four vests. We are now only dealing with three vests because at the forfeiture hearing, the State failed to present one of the vests at that time. They had misplaced it. They later found it. They did not refile forfeiture proceedings against that one vest. They declined. What did they do with it? They returned it to the Civic Organization. Did the club, just use the term club for sake of a better word, did the club provide notice to the criminal defendants that the patches and memorabilia could not be forfeited and should not be used in any way, shape, or form in terms of negotiating the disposition? The bylaws of the organization and those bylaws, the particular part of the bylaw that is at issue, was actually read into evidence by Detective James W. When I talk about specific notice, I'm talking about after their arrest, after formal charges were placed, certainly the club was aware of the ongoing criminal litigation, correct? Yes. No steps were taken up until the time that the forfeiture action was filed to preserve that particular property? I don't think the issue ever became imminent for the club to give such notice because the idea of forfeiture or the idea of relinquishing any interest in the vest was an 11th hour decision within the confines of striking a plea deal. But however that may be, anybody can give up, any one of us can deed over our interest in the Brooklyn Bridge. If we don't have an interest to give over, we're only, we're giving 0%. But then that was a question back to the trial court. Okay. Well, Your Honor, there was no specific notice given to the criminal defendants from the standpoint that the issue really wasn't on the table until the 11th hour. It was a last minute plea matter. How was the club harmed by the delay? Which delay in particular? The delay between the termination of the criminal proceeding or the initiation of forfeiture proceedings from the time of the seizure. And when does seizure occur? Well, when the seizure occurred is really, I think, the essence of what's here. And I think this court decided that matter in People v. Adams. At that point, delivery of property seized by the sheriff, excuse me, was sufficient to satisfy the delivery requirement under Article 36. Delivery commences the 15-day period. And when does seizure happen? When delivery happens. Adams discussed two main issues, the difference between constructive and actual delivery, and then when the clock begins to tick, so to speak. We don't have to concern ourselves with constructive versus actual delivery. It's the McHenry County Sheriffs that actually seized the property pursuant to search warrants on January 31st, 2013. Delivery took place then. But that was in connection with the criminal proceedings, not forfeiture, correct? Yes, Your Honor. But there is no delineation anywhere in case law, in statutory verbiage, that there is a distinction between seizure for forfeiture or seizure for a criminal case. Well, if something, if a piece of property is seized for evidence at a criminal proceeding, how is the state, you're saying the state has to make a decision right then and there that it wants that property forfeited? As opposed to return to the owner after the criminal proceedings are terminated? The state has particular deadlines with which to initiate the forfeiture proceedings. It does not mean that those forfeiture proceedings have to be concluded. But there has to be notice at some level that there is an intent to seize and forfeit. The purpose of Article 36 is to create a means by which the instrument of the crime is somehow no longer available to the criminal suspect. In a DUI, we take away the vehicle, there isn't a DUI. In the illegal sale of firearms, take away a person's cache of guns, they're not going to be able to illegally sell firearms. In this case, we have gang activity. We have a physical assault in a bar. How does removing the vest in any way alleviate the underlying alleged criminal activity? Let me ask you a question. Is the forfeiture with respect to the vest or with respect to the patches? For our concern, we're only concerned about the patches. The vests do belong to the criminal defendants individually. So they have a right to relinquish the rights to the vest? The vest is, if they maintain an interest in it, that would be their own case. But they negotiated that away. The vest, but the patches was not their right to give away. The patches are just a corporate mark of an entity that was not a party. But isn't it the state's position that the gang members used the vest with the patches on it, more importantly, to portray some violent intimidation? So wouldn't that be the basis for not returning them? I think your last question, your last rhetorical question, is how did these— Gotcha. I mean, that is the state's argument, and it is more of a global conclusion that they've reached without anything substantive in the record to that effect. You have occurrence witnesses who said men walked into a bar. The mood changed. People felt uncomfortable. Nobody stated that they felt uncomfortable because of the patches. Perhaps they even felt uncomfortable because the men were clad in leather vests. But the only testimony we have from any witness when asked about the outlaws specifically was Robert Borda, page 106 of the Record of Proceedings. He goes, I'd never heard of them. Whether it read outlaws or any other name, the fact of the matter is it's the men's disposition more than anything else. But whether or not those vests actually facilitated the crime by creating intimidation, number one, there's nothing in the record to that effect. Well, they pled—when they pled guilty and agreed to this, it's essentially their factual finding. Isn't that the problem here for the club, that you've got members of the club admitting something that your position, the club's position, it's just not true? You're a member of the club, but you're not using the club to intimidate, but then two of your members admit that they did use it in that fashion. Your Honor— I mean, that's essentially the problem, isn't it? Respectfully, I don't see where they admitted that they used their club vests. They agreed to a forfeiture, which essentially admits the underlying basis for it. They agreed to the forfeiture. They agreed to surrender their interest in the vests. They didn't necessarily surrender them on the basis that they intimidated. It was simply part of a global settlement deal underlying the plea. This case reminded me of an old case that I was involved in as a prosecutor that involved the outlaws. It was the murder of Anthony Fiati. I don't know if you remember that from 1990. He was shot in the back, and everybody thought it involved the outlaws because there was this dispute between the outlaws and another club. But actually, there was civil litigation pending, so the outlaw's position was, why wouldn't we kill the guy? We have a good civil case pending. But it reminds me of that because the outlaws have this reputation, and members of the club apparently, in this case, acknowledged that the club had something to do with their actions, and then you're stuck with it. It's all reputation, isn't it? With all due respect, Your Honor, I don't see where the plea agreement between the state and the defendants necessitates that the defendants admit that the vest somehow facilitated any gang activity. Yes, Your Honor, reputation plays a large role. And in my limited experience with my client, my client is like a microcosm of society. There is good, there is bad, there is ugly. But a lot of the, I mean, there is a history, and that is with anything. But there is really this popular culture, I don't want to use necessarily the word myth, that promulgated, that creates this image that we have. We see it on reality TV. We see it in movies. But in essence, each member stands alone. They are an individual whose actions are judged according to the law. We have four individuals here who were charged with a crime. Members of the outlaw who are in their 60s. Union workers who've never been charged with a crime in their life. So simply being a member of the outlaws is not a crime. And the entire purpose of taking these vests is taking away the indicia, taking away the mark that identifies themselves. What's the rationale or the basis behind, I don't know if I'm asking you the right question, maybe the mission or the basis for those patches? I mean, why is it so important, why is it the representation of these patches so important? What does the organization hope to achieve by giving these patches or by getting these patches back from the state? There's a certain level of pride that members exhibit when they become members of the motorcycle club. In this particular instance, it's not by any means a rule that they have to wear them at any time. It is a choice like anything else. And I don't believe every member there was necessarily wearing a vest. But as a free member of society here in the United States, if they wish to represent their affiliation with an organization, that's a free speech protection that they have. We actually see this discussed to some degree in, I believe it's Rivera v. Carter, where you have a very similar situation where in that case we were dealing with a RICO matter, a federal RICO matter, versus here we have an Illinois state forfeiture matter, but the parallels are there. We have an underlying crime and we have an attempt to seize the corporate mark on the basis of that. But if this patch was used illegally, if there's a factual finding that they were used illegally, then People v. DeLuca says that it doesn't matter who owned that property, but it can be seized and confiscated. Your Honor, I acknowledge that. But the issue is there's nothing in the record to show that those patches were used. They were disclaimed. They were worn. But how were they used? Were they in implement? The idea that they intimidated is not substantiated. Not one witness has testified to that. In fact, all we have is a paid expert witness who's developed this conclusion, but it could not be substantiated by the fact witnesses. In the alternative, we have one of the state's expert witnesses acknowledge this but-for rationale that a crime was committed whether or not they were wearing the vests. And if they had committed the crime, wearing the vest in and of itself isn't a crime. So if they don't wear the vest and it's still a crime to the same degree, still gang activity, what role did the vests play to create gang activity? It was there regardless. This court in People v. Brandon, this very second district appellate court, created this test on whether something is derivative contraband. It is stated that the state must demonstrate a rational relationship or nexus to the unlawful purpose before being subject to forfeiture. Rational relationship and nexus. What is the rational relationship and nexus? Simply wearing it. I mean, if there is a fight, I would suggest maybe the person's boot would be more of an implement or have more of a rational relationship or nexus than a black leather vest, especially the patches on the vest. It seems to me a far stretch. I know the state is attempting to focus its argument on the word facilitate to make easier, but this is also simply a conclusion without anything in the record to substantiate it. In the end, there is no rational relationship. No nexus has been shown. This is an attempt to circumvent the First Amendment rights of the organization. As the Rivera Court explained, and I'm paraphrasing, if I can finish my thing, as I'm paraphrasing, that an organization doesn't need to be popular. All of its members don't need to be law-abiding citizens. But even if that expression of the First Amendment speech is somehow not palatable to everybody, it's still protected. And in this case, the crime that the four defendants were accused of is separate and apart from exhibition of their membership in the AOA. Thank you, Your Honors. Thank you, Counsel. You'll have an opportunity to respond. Thank you so much. Ms. Dix. Good morning, Your Honors. Good morning. May it please the Court, my name is Jana Blake-Dixon, and I represent the people of the state of Illinois, the appellee, in this matter. The people respectfully request that you uphold the ruling of the trial court that the forfeiture of the leather vests and the attached patches were proper. The first main issue in this matter has to do with the timeliness of the state's initiation of forfeiture proceedings. As a preliminary note, I'd like to clear up a quick ambiguity in the brief regarding the time period that we're working in. The appellant's brief refers to both a 15-day notice period and a 60-day initiation period. The law is quite clear that that 15-day notice period does not apply in this case because the 15-day notice period applies to the section of Article 36 of the Illinois Criminal Code that deals with airplanes, vessels, and automobiles. It doesn't deal with the Article 36 forfeiture of contraband pursuant to the Illinois Street Gang Terrorism Prevention Omnibus Act. There are two main points for why the timeliness in this matter is appropriate. The first is that the items were initially seized pursuant to a Section 108 search warrant and the forfeiture proceedings were not initiated pursuant to Article 36 at that time. There's no indication in the plain language of the statutes or in the case law in Illinois that the time of seizure pursuant to a search warrant has to be the same as the time of seizure pursuant to Article 36 forfeiture. But it's your argument that the forfeiture 60 days doesn't start to run until there's a conviction? Is that what your position is? No, the argument isn't that you have to wait until the conviction. It's that the forfeiture is separate from the criminal proceedings and the 60 days does not run until the time that the state makes the determination to initiate forfeiture proceedings. Typically when you talk about forfeiture, it's very rare talking about something like this. You're generally talking about an automobile. Isn't there a rational basis for the legislation that was passed requiring it to be within a certain period of time? Right, so when you're talking about items of property that have significant monetary value, like a car, there are going to be people, it might not even be the people who are charged in the criminal proceedings who have an interest in that car. However, when you are seizing things pursuant to a search warrant, there's also a possibility that you're depriving people of their use or enjoyment of that property for a prolonged period of time. In this case, the property was seized pursuant to a search warrant nearly two years before the ultimate conclusion of the criminal case. So you're saying the state can take as long as it needs to decide if it wants to begin forfeiture proceedings and then somehow once it makes that decision, it then has 60 days? No, I think that when articles are already in the possession of the state, that is different from when the state makes the decision on the forfeiture. So I think once the state makes the decision, we're going to go ahead and forfeit this item of property, then the 60 days starts ticking. So they can make that decision and nobody knows when they made it, but then you're saying that this time frame, this time limit then starts? Correct. I think that the maximum under a search warrant where the property is held to use as evidence through the course of the criminal proceedings, which was proper here, there are no allegations that would violate the terms of the search statute, the maximum amount of time that a person can be deprived of their property is the length of the criminal proceedings plus 60 days. This is also a very distinct area of forfeiture law that I think is important when you consider the conviction. So the items here, they're not like a gun, they're not drugs, they're not cash, they're not a car. They're contraband pursuant to the Street Gang Terrorism Prevention Act and what the Street Gang Prevention Act says is that you can have this Article 36 forfeiture for contraband that occurs under this act. Well, what's important about the act is that at the forfeiture proceedings for something that's being forfeited because it's considered contraband, the judge needs to make a finding that it's contraband under the Illinois Street Gang Terrorism Act. Well, in order for it to be contraband, it has to be used by a street gang and the street gang under that act deals with the actions of its members and so the convictions of those members is what really matters. And in this case, the judge was able to find that the people who were using the patches were members of the street gangs because they had committed this criminal activity, they had pled guilty, and they also found that there were other members of the street gang that had previous convictions as well. But the convictions in a contraband forfeiture is much more important than it is in your typical forfeiture. The general law in Illinois is a conviction doesn't matter for forfeiture. Here, when the judge needs to make a finding that the items that are being forfeited are contraband and an important part of that statute when you're doing your analysis for contraband is the convictions, the criminal convictions, the criminal activities of the members of that street gang, it would almost render that section of the forfeiture code useless if the state was required to initiate the forfeiture proceedings before the conclusion of the criminal proceedings. So are you saying that the criminal activity constitutes the nexus that needs to be found? I mean, you're not arguing this is per se contraband, right? No. It's a derivative contraband. Sure. So is your argument that the criminal activity demonstrates the nexus? The criminal activity demonstrates the existence of a street gang. So a street gang under that Illinois Terrorism Prevention Act is defined by the actions of its members. It isn't, you know, oh, they call themselves a gang or they have a gang handbook. It is under the act, it is that their members have to have committed, you know, two felony, they have to have two felony convictions or forcible felony convictions within a five-year period that are gang related. So, you know, I think that the analysis of the conviction really matters in a contraband forfeiture hearing. The charges here were aggravated battery? I think aggravated battery involved action and, you know, we had expert testimony come in at the forfeiture hearing that talked about how, you know, these patches are used to facilitate gang activity. You heard counsel's argument, how did this was a conclusion, but given the facts here, how did it, quote, facilitate the activity? When you look at the testimony, well, first we had expert testimony who know more, certainly more about motorcycle gang activity than I know, than I do. And the experts testified that the patches are used to kind of bolster the confidence to identify members and they're used to intimidate people. And when you look at the record, Mr. Robb refers to the fact that, you know, there were witness testimony that said the mood in the bar changed, everybody got quiet. But did they say the mood changed because of the patches or just by the sheer number there and the best? I don't completely know how to answer that. What I would say is that when you have a group of people come in, there is a clear intimidation level and we had expert testimony say that, you know, that is one of the ways in which they facilitate the intimidation. They band together as a group because they're all members of the same club. Correct. But it's the additional criminal activity that they occasionally engage in that make them a street gang and take away their ability to, you know, even claim ownership in the patches because the patches are contraband. Was this the first time the Outlaws Motorcycle Club was characterized as a street gang under the Act? I can't answer that for you, Your Honor. I'm unaware of that. Ms. Dixon, Mr. Robb relied on 1963 Cadillac Coupe, and you indicated in your brief that you felt that his reliance on this was misplaced. Right. Why is that? In the Cadillac Coupe case, the Cadillac Coupe was not originally seized pursuant to a search warrant. It was originally seized pursuant to forfeiture, and the state's attorney in that case failed to initiate the forfeiture proceedings within the 60 days. The state does not argue that we need to initiate the forfeiture proceedings in the 60 days. In fact, you heard Mr. Robb tell the story of how we misplaced one of the vests and we realized that we blew that 60-day deadline and we knew we needed to return it. Here, the state decided to initiate forfeiture proceedings. Actually, upon the notice from the interested party that they claimed some ownership interest in it, and it wasn't until that ownership interest, which the state had no way of knowing anything about, did we go ahead and initiate the 60-day forfeiture proceedings, and we did in a very timely manner. So the forfeiture, the decision to institute forfeiture proceedings can be kind of arbitrary if the property was taken pursuant to a search warrant versus pursuant to a forfeiture. I agree. Is that what you're saying? That is what I'm saying. I agree. I'm asking you if that's what you're saying. That is what I'm saying. So if you take an automobile as a result of an arrest pursuant to a DUI, that would be pursuant to forfeiture and it would need to be done within 60 days. Exactly. But if you take possession of something because of a search warrant, you could initiate it during the pendency of the proceedings or, you know, I think that once the criminal proceedings end, you have to make a decision on the forfeiture. Once your time to possess the items based on that Article 108 requirements, because Article 108 has requirements for disposition of property, once you don't have a claim to keeping that property anymore under Article 108, you either need to give it back or you need to initiate forfeiture proceedings. So from a due process standpoint, you know, again, the maximum amount of time that the state has in a situation where they've properly seized pursuant to a search warrant and then they decide to initiate forfeiture proceedings is the length of the criminal proceedings or until the Article 108 search disposition requirements are triggered plus 60 days. Any further questions? Did you ever raise the standing issue below? We never objected to the standing because the state was aware of the claims within the Outlaw Motorcycle Gang Bylaws. However, you know, again, under the Illinois Street Gang Terrorism Act, contraband, once something is declared contraband, the ownership doesn't matter because nobody's allowed to have an ownership interest in contraband. Correct. So then if nobody's allowed to have an ownership interest, then they wouldn't have standing. Correct. But you didn't object to standing. We didn't object to standing because the contraband analysis must occur at the time of the determination hearing pursuant to forfeiture. So we didn't object to the standing in that case. What's happening with the patches right now? I mean, what's going to happen, assuming we affirm? Unlike other forfeiture proceedings, cash vehicles, they're put to good use by traditionally law enforcement. What good use are these patches to the state? I think the good use of them is getting them off of the street and making the process harder for the motorcycle gang to continue to use them in a way which facilitates criminal activity. Obviously, they're of little monetary value. Contraband Under the Street Gang Terrorism Act is supposed to go to a vital crimes victims fund. Obviously, we're not going to, you know, auction off patches that display gang insignia. What are you going to do with them? I would imagine that the Sheriff's Department would destroy them, but that's just speculation on my part. If you have no further questions, I'd like to thank you for your time. Thank you. Only five minutes. Why don't you address her position with respect to the difference between a search warrant, obtaining property via a search warrant, or obtaining property via an arrest? The argument that the state is making is almost exactly the same argument that the state made in 1963 Cadillac, right? In 1963 Cadillac, the state made the argument that a lapse of time is required for the sheriff to investigate and determine whether to institute forfeiture proceedings. And the court rejected that very same argument as being inconsistent with the statutory commands. But how did they get the property in that case? Was it via a search warrant or via an arrest? I believe it was via arrest, but there is... So that's her distinction. I understand. And that's why my question to you is, how do you rebuke that distinction that she is making? That case is not really analogous because it's just as she said. It was recovered as a result of an arrest versus as a result of a search warrant. Just because there is that distinction, Your Honor, I don't think makes the case not analogous. There is nothing in the statute of Article 36. There is nothing in Article 40 that suggests that the state can at some arbitrary time choose now as forfeiture. In this case, we have October 10, 2014. The criminal case was disposed of in April of 2014. Why 20 months after the point of delivery? Why two months after the point of the criminal disposition? It is wholly arbitrary. It flies in the face of the language in the statute. And frankly, Your Honor, it flies in the face of common sense. The legislature would not have put these time requirements of 15 days or 60 days if the state could just at some arbitrary point conclude when that is. How about her position with respect to the contraband in that section of the statute is separate? The issue of whether or not something gets rendered contraband, the state can make that determination as it's bringing criminal proceedings. There's nothing inherent in criminal proceedings which prevents the state from bringing a forfeiture complaint within 60 days of delivery to the sheriff. They're not mutually exclusive. That's not to say that the forfeiture proceedings have to be heard within a certain date. They just have to be initiated. They can be entered and continued in conjunction with the criminal case if there is a question of whether or not something is contraband that is going to be decided in the criminal case. The forfeiture case can be continued to that time, but notice is still provided. There's a reason so that the state isn't acting arbitrarily. There is a public policy argument that private property is inalienable, and it doesn't have to be property that you and I might necessarily wear, but people have that choice. The issue that counsel also spoke to, that the AOA-15 civic organization claims an ownership interest. They've acknowledged this claim. When they returned that vest to us, they right then and there put no question as to who they believed the rightful owner was. They didn't have to return it to us. They could have given it back to the trial court and said, you know what? This is an issue for the Ricklevin case to determine who is the owner. They didn't do that. They handed it directly over to me on behalf of my clients. Ricklevin is not a defense to forfeiture. Understood, Your Honor, but it does go down to the essence of who had the ownership interest. That's the third time you've mentioned it, though, and it's not a defense to forfeiture. I understand, Your Honor, and that is not the reason that I made mention of it. I made mention of it to establish the issue of ownership. There's another circular argument that counsel makes. She determines that according to the statute, gang activity requires that an individual has two felony convictions over a five-year period. None of this was ever established by the hearing court in the forfeiture hearing that those who were committing the gang activity had multiple felony convictions within a certain period of time. None of this was established. The issue of whether or not there's gang activity, nothing in the record. But as Your Honor had referenced, the issue of contraband. What makes the patches on a vest contraband? If getting these patches off the street were really some larger public policy, number one, that's not a public policy. People can wear the patches if they want. Anybody could. There's nothing that limits that. But if somehow these particular patches, these patches on these three vests are removed, I think they're not replenished, they're not reproduced. Wait a minute. Go back and say that again. So anybody can possess these patches? Anybody in the club can possess these. In the squad. Well, there is an issue. That is an issue that is not really before this court at this time, whether or not anybody here, you know, if they wanted to somehow manufacture the patches. It gets into trademark issues, which is really not before this court. But if I could simply finish my thought very quickly, that the idea of getting patches off the street, these are patches that this organization produces in mass. If a member loses his patch or somehow the patch is taken by the state, he has another patch. There is often situations where a member will have multiple vests. I was looking for a phrase from you, and that is that the courts are for a forfeiture. And if you're going to forfeit something, there should be strict compliance. That really sums up your position. That is what is notated in our brief, yes. Thank you. Thank you so much for your arguments here this morning. The court will take this case under consideration, render a decision in due course. Safe travels back. And again, thank you for your arguments. The court is now in brief recess.